UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON


KATHY L. DAVIS,

        Plaintiff,

v.                                         CIVIL ACTION 3:13-cv-23399

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

     Pending before this Court is Brief in Support of Judgment on the Pleadings in a Social Security Case (ECF No. 11) and Brief in Support of Defendant's Decision (ECF No. 12).

Background

     On July 30, 2010, Kathy Lynn Davis, Plaintiff (hereinafter Claimant), applied for Social Security Benefits (Tr. at 138-139), Disability Insurance Benefits (DIB) (Tr. at 140-143) and Supplemental Security Income (SSI) (Tr. 144-150) alleging disability beginning on September 1, 2004.  On February 3, 2011, the claims for SSI and DIB (Tr. at 72-76 and Tr. at 77-81) were denied initially and again upon reconsideration on June 7, 2011 (Tr. 83-85 and Tr. at 86-88).   Claimant filed a written request for hearing for social security benefits on July 1, 2011 (Tr. at 89-90).  In her request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that she disagreed with the determination made on her claim for SSI Disability/Title II Benefits because she was disabled (Tr. at 89).  Claimant appeared in person and testified at a hearing held in Huntington, West Virginia on February 15, 2012 (Tr. at 29-67).  In the Decision dated April 26, 2012, the ALJ determined that based on the application for a period of disability and disability

insurance benefits, Claimant was not disabled under sections 216(i) and 223 (d) of the Social Security Act and based on the application for supplemental security income, Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act (Tr. at 9-23).  On June 1, 2012, Claimant filed a Request for Review of Hearing Decision of the ALJ because she was unable to engage in SGA before her last date insured (Tr. at 7-8).  On July 19, 2013, the Appeals Council denied Claimant's request for review and "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1).  The Appeals Council stated that it considered the Claimant's disagreement with the decision and found that the information did not provide a basis for changing the ALJ's decision (Tr. at 1).

On September 22, 2013, Claimant bought the present action requesting this Court to review the decision of the defendant and reverse or remand the decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of July 27, 2008 (Tr. at 14).  The ALJ found that Claimant meets the insured status requirements of the Social Security Act through September 30, 2009. (*Id.*)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of syncope,[1] asthma, high blood pressure, diabetes, obesity, osteoarthritis and borderline intellectual functioning. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 15).  The ALJ then

---

[1]Syncope is a temporary loss of consciousness caused by a fall in blood pressure.
*See* http://my.clevelandclinic.org/services/heart/disorders/syncope (last visited September 3, 2015).

found that Claimant has a residual functional capacity to perform light work[2] (Tr. at 17).  However, due to limitations affecting Claimant's ability to perform the requirements of representative occupations, the Vocational Expert (VE) testified at the hearing that representative occupations at the light unskilled level of work could be performed (Tr. at 22) As a result, the ALJ concluded that Claimant could perform jobs such as nonclerical office helper and cashier.  (*Id.*) On this basis, benefits were denied (Tr. at 23).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

[2]  The ALJ ordered that Claimant lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She is restricted from climbing ladders, ropes and scaffolds, but is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  She should avoid concentrated exposure to extreme cold and heat, vibrations and pulmonary irritants such as fumes, odors, dusts and gases.  She is restricted from driving or exposure to hazardous machinery. She requires a sit/stand option exercised at will.  She is limited to simple, routine, repetitive tasks, with few if any workplace changes and no fast-paced production requirements (Tr. at 17).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was born on September 5, 1960 (Tr. at 562). She repeated the 2nd, 3rd and 5th grades. She last completed the eighth grade at the age of 16, however, she earned a GED in her 40s (Tr. at 564).

### The Medical Record

The court has reviewed all evidence of record and will address those portions which are relevant to the issues raised by Claimant. As Claimant's complaint filed with this Court focuses on whether the ALJ presented all of Claimant's limitations in the hypothetical questions before the VE, the undersigned will solely address that allegation.

Based on the pleadings of the parties, the medical record is comprised as follows:

In January 2003, Claimant was admitted to North East Medical Center in Concord, North Carolina, with a chief complaint of syncope. Claimant's discharge summary dated January 23, 2003, listed Ronald Sinclair, M.D., as Claimant's physician (Tr. at 229). Claimant's discharge summary from Northeast Medical Center diagnosed her with "syncope, probable hyperventilation syndrome." The discharge summary's hospital course section reported the following:

> [Claimant] is a 42 year old, white female with significant past history of 8 previous syncopal episodes who had chest pain on the night of admission. She had a syncopal episode and was admitted to the hospital. The patient underwent extensive testing and the MRI and MRA were negative. A noncontract CT of the head was negative.

On June 4, 2008, clinical notes from Ebenezer Medical Outreach, Inc. reported that Claimant had called with complaints about passing out twice. She reported experiencing tingling of her lips, arms and hands lasting approximately 20 minutes. Her blood pressure was normal.

Claimant was directed to go to the emergency room (ER) the next time she has an episode (Tr. at 461).

On June 19, 2008, St. Mary's Medical Center in Huntington, West Virginia, issued a Final Report on Claimant's alleged syncope. The Medical Center reviewed data from a heart monitor which Claimant had been required to wear for 24 hours (Tr. at 499). The final report was completed by St. Mary's Medical Center' physician Ellen Thompson, M.D. (Tr. at 499). Upon reviewing the heart monitor data, Dr. Thompson found that there was no ventricular arrhythmia. Claimant's diary reported that she experienced chest pain and chest pressure, however, this assertion did not correlate with the arrhythmia.

On July 25, 2008, Claimant was treated at the emergency room (ER) at Our Lady of Bellefonte Hospital in Ashland, Kentucky (Tr. at 287-294). Claimant reported being in an automobile accident and complained of a burning sensation in her right hand, mild neck discomfort and mild headaches (Tr. at 287). A CT of claimant's head revealed a 5 mm right frontal subdural with no skull fracture, no edema and midline shift. The CT of Claimant's spine was negative (Tr. at 288).

On November 30, 2009, the Ebenezer Medical Outreach, Inc.' clinical record of Claimant reflected that Claimant had denied experiencing "neuropathy, seizures, syncope and weakness" (Tr. at 546). Claimant saw Ijaz Ahmad, M.D., on September 15, 2010, at Medical Neurology, Inc., in Huntington, West Virginia (Tr. at 560). Claimant reported breaking her leg, injuring her head and experiencing syncopal episodes. (*Id.*) On examination, Claimant had normal cranial nerves, deep tendon reflexes, sensation, and motor strength (Tr. 560). There were no cerebellar deficits (Tr. 560). Dr. Ahmad recommended an EEG, which was normal (Tr. 561, 580). Dr. Ahmad

recommended that Plaintiff avoid driving and hazardous activity, but did not assess any further limitations (Tr. 561)

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to include all of her limitations, specifically syncopal episodes, in the hypothetical presented to the VE at the hearing (ECF No. 11).  In response, Defendant asserts that the ALJ's determination is supported by substantial evidence (ECF No. 12).

### Medical Opinions

On September 14, 2010, nonexamining state agency physician, Fulvio Franyutti, M.D., reported that Claimant could occasionally lift 20 lbs and frequently lift 10 pounds (Tr. at 553). She could stand and walk for about six hours in an eight hour work place.  She could sit for about six hours.  She should never climb ropes, scaffold and ladders and occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl (Tr. at 554). She was to avoid concentrated exposure to extreme cold and heat, vibration, fumes, odors and gases and was to avoid even moderate exposure to hazards such a machinery and heights (Tr. at 556)  Claimant was reported as being partially credible (Tr. at 557).

An office note by Dr. Ijaz Ahmad, M.D., dated September 15, 2010, stated that the claimant was seeing him because of passing out episodes.  Frequency was variable, but they happen several times a month.  Dr. Ahmad suggested additional tests and advised Claimant not to drive or engage in activity which may endanger her or others safety should she have a syncope (Tr. at 560-561).

An evaluation by Lisa Tate, a psychologist, dated September 20, 2010, reported that Claimant "was unable to identify the reason she would have been sent for a psychological evaluation.  [Claimant] reports no current or history of mental health problems" (Tr. at 564). Concentration was moderately deficient based on Digit Span score of 4.  (TR 565)

On October 12, 2010, Holly Cloonan, Ph.D., a nonexamining state psychological agency physician, indicated that there was insufficient evidence to complete an RFC prior to the date last insured (Tr. at 646).  Dr. Cloonan performed a psychiatric review technique on October 12, 2010, which indicated that an RFC assessment was necessary (Tr. at 660).  Dr. Cloonan's notes reflect that Claimant did not allege work-related limits in mental or social [functioning] with her mental condition (Tr. at 672).  However, Dr. Cloonan did find that Claimant will have some moderate limits association with borderline intellectual functioning.  (*Id.*)  Claimant's restrictions of daily activity, difficulties in maintaining social functioning were mildly limited.  Difficulties in maintaining concentration, persistence or pace was reported as moderately limited.  It was stated that she was credible based on the consistency of her report of symptoms across sources.

The mental RFC by Dr. Cloonan, on October 12, 2010, stated she was moderately limited in her ability to understand, remember and carry out detailed instructions as well as the ability to maintain attention and concentration for extended periods (Tr. at 674).  She was also moderately limited in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 675).  She was also moderately limited in her ability to respond appropriately to changes in the work setting.  Dr. Cloonan opined that Claimant could learn and perform routine, repetitive work-like activities in a setting with reduced productivity demands (Tr. at 676).

Kip Beard, M.D., with the Tri-State Occupational Medicine, in Huntington, West Virginia, conducted an internal medicine examination of Claimant on May 26, 2011 (Tr. at 686-691).  Dr. Beard's impression of Claimant included syncope, osteoarthritis, chronic thorocolumbar strain with lumbar degenerative disc disease and spondylosis, asthma, possible left ulnar neuropathy and

borderline diabetes (Tr. at 690).

On June 7, 2011, Thomas Lauderman, DO, a nonexamining state agency physician, reported similar findings to Dr. Beard (Tr. at 696). He based his opinion on the medical evidence, including Dr. Beard's consultative examination (Tr. at 699). Dr. Lauderman opined that Claimant could perform a range of light work that did not require any exposure to hazards (Tr. at 692-699). Claimant was reported as partially credible.

### Vocational Expert

At the hearing on February 15, 2012, the VE testified that Claimant's work experience as a production assembler is classified as light unskilled (Tr. at 61). The VE testified that her work experiences as a hand packager, a kitchen helper, a hospital cleaner and a nursing home cleaner are classified as medium unskilled. (*Id.*) Her experience as a companion to the elderly, based on Claimant's testimony, is classified as medium semi-skilled (Tr. at 62). Her work experience as a "stock clerk with the cashier position" is classified as heavy semi-skilled. (*Id.*) Additionally, Claimant's work experiences as a house cleaner, cashier and clerk are classified as light unskilled. The ALJ asked the VE "If we assumed a hypothetical individual of the claimant's age, education and work experience who can lift and carry 20 pounds occasionally and 10 pounds frequently; no use of ladders, ropes or scaffolds, only occasionally ramps and stairs. Occasionally balancing, stooping, kneeling, crouching, crawling. Avoid concentrated exposure to extreme cold or heat, vibration, fumes, odors, dusts and gasses and no use of hazardous machinery. I'm also going to add in no driving if required for the job. Would any of claimant's past work be available" (Tr. at 63). The VE answered no. The ALJ then asked the VE if there would be other work in the national or local economy for the hypothetical individual. The VE answered yes, the individual would be able to perform light work as a price marker, house sitter and package tagger. (*Id.*) The VE

testified that at the sedentary work level the individual could perform the positions of sorter, bench worker and product inspector (Tr. at 63-64).

The ALJ then instructed the VE to add a sit/stand option that can be exercised at will, in a position that is limited to simple routine repetitive tasks with few if any work place changes and no fast paced production requirements (Tr. at 64). The ALJ asked the VE if there are jobs available for that individual.  The VE testified that "[o]f the jobs I previously identified, house sitter at the light work classification and the sedentary jobs I previously identified would remain."  The ALJ asked if there are other light jobs that meet that definition.  The VE testified that positions as non-clerical officer helper and cashier would meet that definition.  The ALJ asked if the hypothetical individual needed to lay down for ten minutes three times a day due to pain, would there be jobs that he/she could perform.  The VE responded no.  The ALJ then inquired if the need to lay down were left out of the hypothetical and unexpected episodes of syncope that would take him/her out of the work place at unexpected intervals three times a year for one day at a time, would there be jobs he/she could perform (Tr. at 64-65). The VE testified that such an individual could not perform any jobs "[b]ecause the unexpected absences and not knowing when its going to occur would preclude such an individual from maintaining full-time employment" (Tr. at 65).

The VE stated that the jobs she identified are samples instead of exclusive lists of position in the national and regional economy.  She testified that "I have worked as a rehabilitation specialist for over 25 years and in so doing I have completed my own on sight job analysis.  I also utilize information from US Department of Labor, Bureau of Labor Statistics, State of Occupational Employment Estimates, Occudata and the US Publishing Company" (Tr. at 65).

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets

out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

Substantial Evidence

Claimant contends that the ALJ was required to find that she did not have unexpected syncope episodes that would take the claimant out of work at unexpected intervals in order to conclude that she was not disabled (ECF No. 11). In response, Defendant's Brief in Support of Decision asserted that Claimant's argument lacks merit for the following reasons:

> First, the RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record. *See Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. Feb. 7, 2003) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Youkers v. Colvin*, 2014 WL 906484, at *11 (S.D. W.Va. Mar. 7, 2014); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (holding that hypotheticals to VEs need not credit every symptom alleged by the claimant, only those that are

"medically established"); *Jones v. Barnhart*, 364 F.3d 501, 506-07 (3d Cir. 2004) (holding that, while ALJs may pose multiple hypotheticals, they need only credit those that are consistent with the evidence of record). The ALJ is not required to adopt VE testimony in response to limitations that are not supported by the record. *Youkers*, 2014 WL 906484 at *11. *See also Parker v. Colvin*, 2013 WL 4748409 (W.D.N.C. Sept.4, 2013) ("[T]he fact that the Vocational Expert ("VE") responded to a hypothetical posed . . . which was not consistent with the ALJ's RFC determination is of no consequence.").

Second, Plaintiff, who bears the burden of presenting evidence of her limitations, has not identified any objective findings that confirm she had more than three syncope episodes of a significant nature per year (Pl.'s Br. at 7). *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a) (stating that "in general, you have to prove to us that you are . . . disabled."); *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004) (unpublished) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)) "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition."); *Sharts v. Astrue*, 2012 WL 5389705, *10 (M.D.Pa. Nov. 2, 2012) (SSA's regulations "require that an applicant for disability benefits come forward with medical evidence 'showing that [she] has an impairment and how severe it is during the time [she] says [ she is] disabled."). While the record does confirm a syncope diagnosis, (Tr. 561), the objective medical evidence does not establish frequently occurring syncope episodes. There are no documented syncope episodes during the relevant period. A mere diagnosis alone does not compel a finding of disability. "There must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Accordingly, because Plaintiff has not satisfied her burden of proof, the ALJ was not bound to include this in the RFC assessment, and was not required to accept VE testimony on such a limitation.

Third, the record does not reflect the frequency or severity of syncope episodes that Plaintiff alleges. Diagnostic testing "was negative for causes of syncope" (Tr. 229). Her brain MRI and head CT scan were unremarkable (Tr. 236, 238). An EEG in October 2010 also was normal (Tr. 561, 580). While "an incidental tiny meningioma" was noted following Plaintiff's July 2008 motor vehicle accident, this did not appear to be related to her reported syncope episodes (Tr. 332, 368-69). Further, as the ALJ noted, the record contained a two-year gap between July 2008 and

approximately August 2010, during which Plaintiff did not relate syncope symptoms (Tr. 20, 368, 546, 550, 561). No physician assessed limitations related to Plaintiff's syncope beyond those identified by the ALJ. On September 15, 2010, neurologist Dr. Ahmad advised that Plaintiff not drive or engage in hazardous activities, but did not assess any other work-preclusive limitations (Tr. 561). On May 26, 2011, Plaintiff related that her last syncope episode was in December 2010 – five months earlier (Tr. 686). Prior to that incident, Plaintiff related that her last episode occurred when she was 48 years old (i.e. in 2008) – an approximately two year gap (Tr. 686). She did not relate any current syncope symptoms (Tr. 686). Dr. Beard did not assess any work-preclusive limitations based on his examination and Plaintiff's reported syncope symptoms (Tr. 691). Drs. Franyutti and Lauderman also opined that Plaintiff could perform a range of light work despite her syncope (Tr. 552-59, 570-77; 692-99 ). The Commissioner's regulations explain that state agency physicians like Drs. Lauderman and Franyutti are "highly qualified" and "experts" in social security disability evaluation, and their opinions merit significant consideration. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (an ALJ is entitled to rely upon and must consider as opinion evidence professional assessments from state agency physicians because they are highly qualified experts in disability evaluation); *Mitchell v. Astrue*, 2009 WL 4823862, at *7 (E.D. Va. Dec. 11, 2009) (noting that state agency medical consultants are experts in social security disability evaluation); *Talmage v. Astrue*, 2010 WL 680461, at *8 (W.D. Pa. 2010) (explaining that state agency physicians are medical experts in disability "whose opinions are entitled to some, if not great, weight"). On October 24, 2011, progress notes reflect that Plaintiff was "negative" for complaints of seizures or syncope (Tr. 731). This evidence does not support a finding that Plaintiff required further limitations for her syncope than already identified by the ALJ. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (explaining that objective medical evidence is a "useful indicator to assist [the agency] in making reasonable conclusions about the intensity and persistence" of a claimant's symptoms).

Essentially, the only "evidence" of record to support Plaintiff's position is her unsupported statements that she frequently experienced syncope episodes. However, subjective statements alone are not enough to establish functional limitations. *See* 20 C.F.R. §§ 404.1528(a), 416.928(a). Subjective complaints "*must* be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected *to produce the actual [symptom], in the amount and degree, alleged by the claimant*." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996)

(emphasis added).  Notably, Plaintiff related inconsistent statements regarding the frequency of her syncope symptoms.  While she told Dr. Ahmad that she experienced several episode per month (Tr. 560), just one month earlier she told her treating sources at Ebenezer Medical Outreach that she experienced only two episodes in 2010 (Tr. 550). At a follow up appointment at Ebenezer on October 25, 2010, Plaintiff denied experiencing any syncope symptoms since her last visit in August 2010 (Tr. 740).  In May 2011, Plaintiff told Dr. Beard that she experienced only once syncope episode in 2010, but had no other symptoms since 2008 (Tr. 686).    These inconsistencies, as well as the lack of objective evidence documenting a syncope cause or episode, render Plaintiff's reports less reliable.  *See* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *5 (S.S.A.) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  Plaintiff's subjective complaints as documented in medical records also do not constitute objective medical findings because "[i]f this were true, it would completely vitiate any notion of objective clinical evidence. *Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)).[3]   (ECF No. 12).

## Discussion

In the present matter, the ALJ arrived at the following residual functional capacity assessment (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with restrictions.  The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She is restricted from climbing ladders, ropes and scaffolds, but is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  She should avoid concentrated exposure to extreme cold and heat, vibrations and pulmonary irritants such as fumes, odors, dusts and gases.  She is restricted from driving or exposure to hazardous machinery.  She requires a sit/stand option exercised at will.  She is limited to simple, routine, repetitive tasks, with few if any workplace changes and no fast-paced production requirements (Tr. at 17).

---

[3] It is well-settled that credibility determinations as to a claimant's testimony regarding her symptoms are exclusively within the ALJ's, and not a physician's, province. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 765 (3d. Cir. 2009), citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).  "The credibility determinations of an administrative judge are virtually unreviewable on appeal." *Bieber v. Dep't. of the Army*, 287 F.2d 1358, 1364 (Fed. Cir. 2002).

The ALJ found that Claimant's abilities to perform all or substantially all of the full range of unskilled light work has been impeded by additional limitations (Tr. at 22). The ALJ asked the VE at the hearing whether jobs existed in the national economy for an individual with Claimant's age, education, work experience and residual functional capacity would erode the unskilled light occupational base of jobs in the economy (Tr. at 22). The VE testified that given all of Claimant's additional limitations as well as her age, education, work experience and residual functional capacity, a like individual would be able to perform the requirements of representative light unskilled occupations. Examples provided by the VE included nonclerical office helper and cashier. The ALJ found that pursuant to SSR 00-4p, the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Because the hypothetical question presented by the ALJ accurately reflected Claimant's functional limitations, the ALJ reasonably relied upon the VE's testimony to find Claimant not disabled. Accordingly, this Court recommends proposes that the presiding District Judge find that ALJ's decision is supported by substantial evidence.

## Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11), and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days

(mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   September 8, 2015

Dwane L. Tinsley
United States Magistrate Judge